IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

JEFFREY LEN WALL                                                                           PLAINTIFF

v.                      CIVIL NO.         3:09-CV-3007-JRM

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                         DEFENDANT

**MEMORANDUM OPINION**

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for supplemental security income ("SSI") under Title XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.**         **Procedural Background:**

On March 16, 2006, Plaintiff filed his disability applications alleging an inability to work beginning December 1, 2005 (Tr. 51-54, 211-214). The Social Security Administration denied Plaintiff's applications initially and on reconsideration (Tr. 24-26, 29-30, 216-218). Pursuant to Plaintiff's request, an administrative law judge (ALJ) conducted an administrative hearing on December 7, 2007, at which Plaintiff and a lay witness appeared and testified (Tr. 305-335). Attorney Ashley Hunt represented Plaintiff at the administrative hearing (Tr. 220).

On July 22, 2008, an ALJ issued an unfavorable decision (Tr. 13-20). In his decision, the

ALJ found as follows. Plaintiff had a severe impairment due to a mood disorder (Tr. 15 - Finding 3). Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1, Subpart P, Regulation No. 4 (Tr. 16 - Finding 4). Plaintiff's subjective allegations of limitations were not entirely credible (Tr. 17). Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels, but with nonexertional limitations (Tr. 16 - Finding 5). Plaintiff could not perform his past relevant work (Tr. 18 - Finding 6). Relying on a vocational expert's response to interrogatories, the ALJ found that other work existed in significant numbers in the national economy that Plaintiff can perform (Tr. 19 - Finding 10). As a result, the ALJ found that Plaintiff was not disabled at any time through the date of his decision (Tr. 19 - Finding 11). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review (Tr. 3-5).

## II.     Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id.* "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742,

747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A).

The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.     Applicable Facts

Jeffrey Wall is a forty-one (41) year old male (T.18,51,211,222) who currently resides in Harrison, Arkansas (T.53,212). Mr. Wall has a high school education and his past relevant work consists of employment as a general laborer (T,18,87,93,223). On March 21, 2006 the Plaintiff alleged disability with an onset date of December 1, 2005 (Tr. 211) , The Plaintiff listed his initial reasons for disability as severe depression; arthritis and high blood pressure. (Tr. 92). On June 5, 2007 the Plaintiff stated that he did have new physical and mental conditions which included trouble concentrating; tired mostly all the time and trouble moving about. (Tr. 77).

On December 13, 2004 the Plaintiff did present to the Eagle Heights Clinic because of a fall and was diagnosed with two fractured ribs. The Plaintiff was seen by Dr. Victor S. Chu who prescribed Lotrel (treatment of hypertension) and vicodin (pain) and instructed him to perform deep breathing exercises. (Tr. 156)

On January 3, 2005 the Plaintiff returned to the Eagle Heights Clinic and was seen by Dr. Chu who released the Plaintiff to go back to work. (Tr. 156).  On February 25, 2005 the Plaintiff did present to Dr. Victor Chu to check his blood pressure which was 150/100. Lotrel was prescribed. (Tr. 155).

On September 14, 2005 the Plaintiff was admitted to the North Arkansas Regional Medical Center because of an attempted suicide. (Tr. 117-141).

On September 15, 2005 the Plaintiff was admitted to residential treatment at The BridgeWay and was diagnosed with Depression NOS, Alcohol Dependence, Hypertension.(Tr. 149-150). On September 23, 2005 the Plaintiff was discharged from The BridgeWay and Dr. Brian Neukirch diagnosed the Plaintiff with Depression and Alcohol dependence, Hypertension.

His GAF at the time of discharge was 50. The Plaintiff was placed on Norvasc 10 mg, Lisinopril 20 mg, Dyazide 37.5/25 mg, and Lexapro 10 mg.(Treatment for Major Depressive Disorder) (Tr. 142).

On September 30, 2005 the Plaintiff did present to Dr. Victor Chu who assessed the Plaintiff with Benign Essential Hypertension and continued the prescription for Lexapro and authorized six refills. (Tr. 151-152).

On March 21, 2006 the Plaintiff filed for disability contending that his disability began on December 1, 2005.

On April 23, 2006 the Plaintiff filed a supplemental report stating that he suffered from severe depression, high blood pressure and pain in his feet, legs and back. (Tr. 66-75).

On June 5, 2006 the Plaintiff filed a supplemental report contending that he had additional physical or mental limitations consisting of trouble concentrating, fatigue and trouble moving about. (Tr. 77-98).

On May 23, 2006 Dr. Alice Davidson, a non-examining consultive physician, prepared a report. (Tr. 157-159).

On July 5, 2006 Dr. Stephen Harris meet with the Plaintiff for the purpose of preparing a Mental Status and Evaluation of Adaptive Functioning Report. (Tr. 160-164).

On July 7, 2007 Dr. Brad Williams prepared a Mental Residual Functional Capacity Assessment. (Tr. 165-184).

**IV.    Discussion**:

The claimant has the burden of proving his disability by establishing a physical or mental impairment lasting at least twelve months that prevents him from engaging in any substantial

gainful activity. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *Ingram v. Chater*, 107 F.3d 598, 601 (8th Cir. 1997). The Act defines a physical or mental impairment as an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3) and 1382c.

**Physical Impairments:**

The Plaintiff has no medical record history until he was seen at the Eagle Heights Clinic on December 13, 2004 for some broken ribs. His blood pressure at the time was 180/120 and Dr. Chu prescribed Lotrel. When the Plaintiff came back to the clinic on January 3, 2005 his blood pressure was 158/92 and Dr. Chu released him to go back to work. (Tr. 156).

When the plaintiff was admitted to North Arkansas Regional Medical Center on September 15, 2005 for a suicide attempt his blood pressure was 138/78. (Tr. 118). It is clear that the Plaintiff's high blood pressure was responsive to medication. Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits. *See, e.g., Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir.2004); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987); see also *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir.1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication). *Warre v. Commissioner of Social Sec. Admin*. 439 F.3d 1001, 1006 (C.A.9 (Or.),2006). The Plaintiff admitted that he was not fully complaint with taking his medication. (Tr. 149) and as a result when he was admitted to The BridgeWay on September 15, 2005 his blood pressure was 166/111. (Id.).

Brian Neukirch, M.D., a physician at the BridgeWay Hospital, noted in a physical

examination report dated September 20, 2005 that Plaintiff was well-developed in no apparent distress; and had full range of motion of all his extremities, including his spine which was linear and nontender (Tr. 145-146). Dr. Neukirch did not note that Plaintiff had or complained of any physical impairments. *See Barrett v. Shalala*, 38 F.3d 1019, 1022 (8th Cir. 1994) (absence of medical evidence a factor to be considered).

In addition to the results of objective medical tests, an ALJ may properly consider the claimant's noncompliance with a treating physician's directions, *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir.2001), including failing to take prescription medications, *Riggins v. Apfel*, 177 F.3d 689 at 693, seek treatment, *Comstock v. Chater*, 91 F.3d 1143, 1146-47 (8th Cir.1996), and quit smoking. *Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir.1997). *Choate v. Barnhart,* 457 F.3d 865, 872 (C.A.8 (Mo.),2006).

There is nothing in the medical records to support the Plaintiff's claim that he is disabled by arthritis or any other physical ailment nor does it appear that the Plaintiff ever sought treatment for these complaints. In general, the failure to obtain follow-up treatment indicates that a person's condition may not be disabling or may not be as serious as alleged. *See Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir.1995) (holding "[g]iven his alleged pain, Shannon's failure to seek medical treatment may be inconsistent with a finding of disability"). *May v. Astrue*, 2010 WL 143688, 4 (W.D.Ark.) (W.D.Ark.,2010).

Plaintiff has presented no medical evidence showing that he complained or sought medical treatment for low back pain, leg pain, or any physical problem during the relevant period. There is no evidence that Plaintiff was taking any prescription medication for pain. See *Baker v. Barnhart*, 457 F.3d 882, 893 (8th Cir. 2006) (in assessing credibility, the ALJ properly

considered the fact that plaintiff was not taking pain medication). Thus, Plaintiff's allegation that his complaints of severe pain are well documented by his physicians is without merit. *See* Plaintiff's Brief, at 14-16. *See Dixon v. Sullivan*, 905 F.2d 237, 238 (8th Cir. 1990) (holding that medical evidence did not indicate a condition which could be expected to produce the level of pain alleged).

After fracturing a rib in December 2004 the Plaintiff was allowed to return to work by his treating physician, Dr. Chu, on January 3, 2005. Dr. Chu noted the Plaintiff's hypertension on January 3, 2005 but still allowed him to return to work. (Tr. 145). Dr. Chu only prescribed Lotrel for the hypertension. (Id.). Dr. Chu made no notations that the Plaintiff was complaining of leg pain, back pain or arthritis.

Therefore, even though plaintiff may suffer from some degree of pain and discomfort, he has not established that he is unable to engage in any and all gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir.2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d at 1213 (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled).

In April 2006 the Plaintiff stated that he did his housework, would feed and water the dog and water the garden. (Tr. 68). The Plaintiff also stated that he did daily cleaning, laundry, repairs (to the home) as needed, and would mow the yard every two weeks. (Tr. 70). The Plaintiff also stated that he would go out two to three times per week, dive his car, go out alone and shop for house hold goods every two week which would take about two hours. (Tr. 71).

At the administrative hearing on December 7, 2007 the Plaintiff contradicted almost

every assertion made in 2006. He stated that he could still do household chores (Tr. 236) but that the last time he went shopping was two years ago and he had a panic attack then and left the shopping cart at the store. (Tr. 232). The Plaintiff stated that he had left the house only a few times to walk to a corner store to buy one or two items and stated that he did not otherwise go out. (Tr. 233). The Plaintiff also denied that he drove a vehicle even though he had a license. (Tr. 228). Contradictory statements by the Plaintiff undermines his credibility concerning the nature and intensity of the alleged disability. The court defers to the ALJ's credibility determination, especially where the testimony appears to indicate that plaintiff gave contradictory answers. *Human v. Barnhart*, 2006 WL 2422182, 3 (D.Kan.) (D.Kan.,2006)

    Under the regulations, Plaintiff must provide evidence that he is disabled. 20 C.F.R. §§ 404.1512(a), 416.912(a). A physical or mental impairment must be established by medical evidence not only by a claimant's statements of his symptoms. Id. §§ 404.1508, 416.908. Additionally, the ALJ is not required to order consultative evaluation of every alleged impairment. *Matthews v. Bowen*, 879 F.2d 422, 424 (8th Cir. 1989). He simply has the authority to do so if the existing medical sources do not contain sufficient evidence to make an informed decision. *Id*.

    Dr. Alice Davidson performed a consultive examination on May 23, 2006 and found that the Plaintiffs's physical impairments would be rated not severe. (Tr. 157). The results of a one-time medical evaluation do not constitute substantial evidence on which the ALJ can permissibly base his decision. *See, e.g., Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir.1999) (stating that the opinion of a consultative physician does not generally satisfy the substantial evidence requirement). This is especially true when the consultative physician is the only

examining doctor to contradict the treating physician. Id. *Cox v. Barnhart* 345 F.3d 606, 610 (C.A.8 (Ark.),2003). That is not the case before the court. The Plaintiff was seen by several treating physicians and all of them supported the opinion of the consultative physician that the Plaintiff's physical impairments were not sever.

**Alcoholism:**

Alcoholism, alone or in combination with other impairments, can be a disabling condition. *Metcalf v. Heckler*, 800 F.2d 793, 796 (8th Cir.1986) (citing *Brand v. Secretary of HEW*, 623 F.2d 523, 524 n. 1 (8th Cir.1980)). To establish disability based on alcoholism, a social security claimant must show that he has lost self-control to the extent of being unable to seek and use means of rehabilitation and that his disability is encompassed by the Social Security Act. Id. (citing *Adams v. Weinberger*, 548 F.2d 239, 245 (8th Cir.1977)). *Shelltrack v. Sullivan,* 938 F.2d 894, 897 (C.A.8 (N.D.),1991).

Dr. Harris, the consulting Psychologist, diagnosed the Plaintiff with Alcohol Abuse in full sustained remission by patient report. (Tr. 163). In this case, even though the Plaintiff had been a daily drinker since 18 (Tr. 118) and purported to drink 1-2 pints per day (Tr. 144) it appears that the Plaintiff has been able to stop for 1-3 months at a time. (Id.) In addition, according to the Plaintiff's brother, the Plaintiff had not been drinking for a while because he would not buy any for him. (Tr. 243).

**Mental Impairments:**

On September 14, 2005 the Plaintiff was admitted to the North Arkansas Regional Medical Center because of attempted suicide. (Tr. 117-141). The Plaintiff acknowledged that he was a daily alcohol drinker since age 18 and that he had taken several Benadryl tablets with

-10-

alcohol in an attempt to kill himself. (Tr. 118). The Plaintiff was treated at the North Arkansas Regional Medical Center on September 14, 2005 (Tr. 117-137) and then transferred to The BridgeWay medical facility.(Tr. 138-141).

When the Plaintiff's Past Psychiatric History was taken by Dr. Neukirch at The BridgeWay he noted as follows:

> Past psychiatric history is entirely negative. There have been no psychiatric hospitalizations, no prior psychiatric treatment, and no history of assaultive or suicidal behavior. There is no history of depression, anxiety attacks, or other common psychiatric symptoms. No psychotropic medications have ever been taken. There is no history of non compliance with medication or treatment.

Dr. Neukirch discharged Plaintiff from inpatient treatment on September 23, 2005, after Plaintiff demonstrated he was ready for outpatient treatment (Tr. 142). The ALJ noted that there was no evidence Plaintiff sought further mental treatment after September 23, 2005 (Tr. 142). *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (in assessing credibility, the ALJ properly noted that plaintiff failed to maintain consistent treatment pattern for alleged mental impairments). The failure to seek mental treatment is inconsistent with allegations of having a disabling mental impairment. (Tr. 17). *See Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006) (the absence of an objective medical basis which supports the degree of severity of subjective complaints is just one factor to be considered).

The Plaintiff acknowledged that he did not get current treatment for his mental condition because he did not have the money. (Tr. 230). The Plaintiff does not appear to have made any effort to obtain mental health treatment. *See Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir.1992) (rejecting claim of financial hardship where there was no evidence that claimant

attempted to obtain low cost medical treatment or that claimant had been denied care because of her poverty); *Hutsell v. Sullivan*, 892 F.2d 747, 750 n. 2 (8th Cir.1989) (noting that "lack of means to pay for medical services does not ipso facto preclude the Secretary from considering the failure to seek medical attention in credibility determinations.") (internal quotations omitted). Cole v. Astrue  2009 WL 3158209, 6 (W.D.Ark.) (W.D.Ark.,2009).

On July 7, 2006, Brad Williams, Ph.D., a psychologist and Agency consultant, completed a Psychiatric Review Technique Form (PRTF), where he diagnosed Plaintiff with an affective disorder, a personality disorder, and a substance addition disorder (Tr. 169, 172, 176-177).  Dr. Williams rated Plaintiff's functional limitations, the "B" criteria of the listings, and found that Plaintiff had mild restrictions of activities of daily living; moderate difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation, each of extended duration (Tr. 179).

Along with the PRTF, Dr. Williams completed a mental residual functional capacity of Plaintiff (Tr. 165-167). Dr. Williams assessed Plaintiff's mental functional capacity and found that Plaintiff did not have significant limitations in understanding and memory, other than having moderate limitations in his ability to understand and remember detailed instructions (Tr. 165). Dr. Williams also found that Plaintiff did not have significant limitations in sustained concentration and persistence, other than having moderate limitations in his ability to carry out detailed instructions, to maintain attention and concentration for extended periods, to make simple work-related decisions, and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (Tr. 165-166). Dr. Williams further found

that Plaintiff did not have significant limitations in social interaction and adaption, other than moderate limitations in his ability to accept instructions and respond appropriately to criticism from supervisors and in his ability to set realistic goals or make plans independently of others (Tr. 166). As a result of his evaluation, Dr. Williams opined that Plaintiff was able to perform unskilled work "where interpersonal contact is incidental to work performed, e.g. assembly work; complexity of tasks is learned and performed by rote, few variables, little judgment; supervision required is simple, direct and concrete" (Tr. 167).

Dr. Steven Harris, a consulting psychologist, performed a Mental Status and Evaluation of Adaptive Functioning examination of the Plaintiff on June 5, 2006. (Tr. 160-164). Dr. Harris opined that Plaintiff had a Global Assessment of Functioning (GAF) of 58, which indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning (Tr. 163).[4] See Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. text. rev. 2000)(DSM-IV-TR). Thus, contrary to Plaintiff's allegation, Dr. Harris' opinion supports the ALJ's finding that Plaintiff had the mental residual functional capacity to perform unskilled work, "which needs little or no judgment to do simple duties that can be learned on the job in a short period of time" (Tr. 16 - Finding 5). 20 C.F.R. §§ 404.1568 and 416.968. See Plaintiff's Brief, at 19.

After finding that Plaintiff could not perform his past relevant work, the ALJ properly used vocational expert (VE) testimony to determine whether Plaintiff could perform other work available in the national economy (Tr. 110-115). The ALJ asked the VE to assume a hypothetical person of Plaintiff's age, education, and residual functional capacity (Tr. 112). The ALJ also asked the VE whether there were jobs existing in the national economy that the

hypothetical person could perform given the same facts (Tr. 113). In response to the ALJ's hypothetical question, the VE testified that the hypothetical individual could work as a poultry eviscerator, with 45,563 jobs existing in the national economy; a small products assembler, with 74,085 jobs existing in the national economy; and a cleaner, with 201,110 jobs existing in the national economy (Tr. 253). The VE's testimony supports the ALJ's determination that there were jobs existing in significant numbers in the national economy which Plaintiff can perform. Pierce v. Apfel, 173 F.3d 704, 707 (8th Cir. 1999) (testimony from a VE based on a properly phrased hypothetical question constitutes substantial evidence).

Testimony from a vocational expert based upon a properly phrased hypothetical question constitutes substantial evidence. *See Warburton v. Apfel*, 188 F.3d 1047, 1050-51 (8th Cir. 1999); Roe v. Chater, 92 F.3d 672, 675 (8th Cir. 1996).

**V.     Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision, and thus the decision should be affirmed.  The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

IT IS SO ORDERED this January 29, 2010.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE